**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

KYM L. LOFLAND,                          :
                                         :
                    Plaintiff,           :
                                         :
        v.                               :       Civ. No. 12-624-RGA-MPT
                                         :
MICHAEL J. ASTRUE,                       :
COMMISSIONER OF SOCIAL                   :
SECURITY,                                :
                                         :
                    Defendant.           :


## REPORT AND RECOMMENDATION

## I.    INTRODUCTION

Plaintiff, Kym L. Lofland ("plaintiff") filed this action against defendant Michael J.

Astrue, Commissioner of Social Security ("defendant").  Plaintiff seeks judicial review,

pursuant to 42 U.S.C. § 405(g), of a denial of her application for disability insurance

benefits ("DIB") under Title II of the Social Security Act.  Presently before the court are

the parties' cross-motions for summary judgment.  Plaintiff's motion for summary

judgment seeks remand the Commissioner for further consideration.[1]  Defendant's

cross-motion for summary judgment requests the court affirm the decision to deny

benefits.[2]  For the reasons set forth below, the court will grant plaintiff's motion for

summary judgment, deny defendant's cross-motion for summary judgment, and remand

to the ALJ for further consideration of plaintiff's hand/arm limitations.

---

[1] D.I. 13.
[2] D.I. 16.

## II.      BACKGROUND

### A.      Procedural Background

On May 2, 2007, plaintiff applied for DIB[3] due to neck, back, arm, knee and head pain, as well as high blood pressure.[4]  Plaintiff amended her onset date prior to the administrative hearing to allege disability since May 24, 2007.[5]  Her application was denied initially on October 2, 2007,[6] and on reconsideration on November 19, 2008.[7] On January 13, 2009, plaintiff filed a written request for a hearing.[8]

A hearing before Administrative Law Judge ("ALJ") Edward J. Banas was conducted on April 8, 2010.[9]  Plaintiff, represented by counsel, testified at the hearing. Christina L. Beatty-Body ("Beatty-Body"), an impartial vocational expert, also appeared at the hearing.

On April 30, 2010, the ALJ issued a written decision denying plaintiff's application for DIB.[10]  The ALJ noted plaintiff's insured status expired on September 20, 2008, and thus she was required to establish disability on or before that date in order to be entitled to a period of disability and DIB.[11]  After reviewing the record, the ALJ determined plaintiff was not disabled under sections 216(I) and 223(d) of the Social Security Act.[12]

---

[3] D.I. 11 at 139-43, 160.
[4] *Id.* at 17, 139-41, 164.
[5] *Id.* at 39, 151.
[6] *Id.* at 58.
[7] *Id.* at 59.
[8] *Id.* at 74-75.
[9] *Id.* at 34-57.
[10] *Id.* at 14-33.
[11] *Id.* at 17.
[12] *Id.* at 17-28.

2

Specifically, the ALJ found plaintiff had severe impairments, including cervical facet and myofascial pain syndromes with cervical disc protrusions, a history of migraine headaches, and bilateral patellofemoral syndrome,[13] but nonetheless had the residual functional capacity to perform a range of simple, routine, unskilled sedentary work.[14] Consequently, the ALJ concluded plaintiff was not disabled, as defined in the Social Security Act, at any time from May 24, 2007, the amended alleged onset date, through September 30, 2008.[15]

Plaintiff's subsequent appeal to the Appeals Council was denied, as the Council concluded there was no basis for reviewing the ALJ's decision.[16]  The ALJ's decision, therefore, constitutes the final decision of the Commissioner.[17]

Having exhausted all administrative remedies, plaintiff now seeks judicial review of this decision.  On November 8, 2012, plaintiff moved for summary judgment.[18]  On January 10, 2013, defendant crossed moved for summary judgment.[19]

### B.    Factual Background

Plaintiff was born on December 15, 1961.[20]  She was forty-six years old as of her last insured date, and is considered a "younger person" at all times relevant to her DIB application.[21]  Plaintiff is a high school graduate with an associate's degree,[22] with prior

---

[13] *Id.* at 19-22.
[14] *Id.* at 17-28.  *See also* 20 CFR § 404.1567(a).
[15] *Id.* at 27.
[16] *Id.* at 1-3.
[17] *Id.*
[18] D.I. 13.  *See also* D.I. 14.
[19] D.I. 16.  *See also* D.I. 17.
[20] D.I. 11 at 139.
[21] *See* 20 C.F.R. § 404.1563(c) ("If you are a younger person (under age 50), we generally do not consider that your age will seriously affect your ability to adjust to other work.").
[22] D.I. 11 at 40.

3

vocational experience as a program coordinator, child support specialist, and addictions counselor.[23]  Her detailed medical history is contained in the record; this recommendation will provide a brief summary of the pertinent evidence.

### 1.    Medical Evidence

Prior to the alleged onset date, plaintiff was involved in a motor vehicle accident in May 2001.[24]  Thereafter, plaintiff complained of significant neck and arm pain.[25]  An MRI performed in August 2001 revealed two small disc protrusions at C4-5 and C5-6 which slightly impinged her spinal cord.[26]  She was involved in a second motor vehicle accident in August 2001.[27]  Plaintiff received steroid injections and physical therapy for her injuries.[28]

In 2002, plaintiff began treating with Patrick Callahan, M.D., of Chesapeake Anesthesiology and Pain Management Physicians.  Dr. Callahan first treated plaintiff on May 12, 2002 for complaints of neck and arm pain, headaches, numbness, insomnia, and mild depression.[29]  During that appointment, the physical exam was significant for tenderness along the cervical facet joints and cervical paraspinous muscles.[30]  Her cervical range of motion was approximately 40%, with decreased sensation to light touch in the C5 and C6 dermatomes.[31]

By October 2002, plaintiff had returned to work, and by December 2002, Dr.

---

[23] *Id.* at 51-52.
[24] *Id.* at 255.
[25] *Id.* at 386-87.
[26] *Id.* at 271.
[27] *Id.* at 255.
[28] *Id.* at 253-70.
[29] *Id.* at 271.
[30] *Id.*
[31] *Id.*

Callahan prescribed Methadone and Percocet for her pain.[32]  In April 2003, plaintiff stopped working due to headaches and muscle spasms.  From April 2003 to August 2005, she continued treatment with Dr. Callahan for medication management of her cervical condition, which included pain medication, and intermittent cervical steroid and bilateral medial branch block injections.[33]

On April 14, 2005, her primary care physician, John Asman, Jr., D.O., noted plaintiff was "feeling well with no new complaints" with continued cervical injections, and was taking Norvasc for hypertension.[34]  Dr. Asman reported again on June 10, 2005, plaintiff was "feeling well, no complaints."[35]

On August 14, 2005, plaintiff slipped and fell onto both knees.[36]  Two days later, she saw Dr. Asman for right shoulder and arm pain, after previous treatment in the emergency room, with x-rays taken.[37]  The x-ray findings were normal.[38]

Nearly two years later, on April 19, 2007, plaintiff saw Evan H. Crain, M.D., of First State Orthopaedics, for a second opinion for bilateral knee pain.[39]  Dr. Crain noted she fell in 2005, and experienced pain since then.[40]  An MRI of both knees showed slight irregularity of the patella, no joint effusion, and intact menisci and ligaments.[41]  His diagnosis was patellofemoral contusions, and he prescribed an at home patellofemoral

---

[32] *Id.* at 253-70.
[33] *Id.* at 253-70, 273-353, 386-87, 427-30.
[34] *Id.* at 367.
[35] *Id.*
[36] *Id.* at 358, 368.
[37] *Id.* at 368.
[38] *Id.*
[39] *Id.* at 358.
[40] *Id.* at 358.
[41] *Id.* at 359.

rehab program.[42]

On May 24, 2007, Dr. Callahan wrote a letter on plaintiff's behalf documenting his prior treatment.[43]  Since he was not involved in her care at the time of the accident he could not opine on the exact cause for the positive findings, but confirmed her complaints and his findings were typical for vehicular accidents.[44]  He noted his initial diagnoses in 2002 were multilevel cervical disc protrusions, chronic headaches exacerbated by the accidents, and cervical facet and myofascial pain syndrome,[45] treated by periodic cervical spinal injections and pain medication.[46]

Although that treatment was effective, it only partially addressed plaintiff's pain.[47] Because pain medication interfered with work, he doubted she could maintain consistent employment in the future. [48]  Dr. Callahan could to not rate the degree of her impairment, disability or permanancy.[49]

On June 7, 2007, Dr. Callahan administered four bilateral cervical trigger point injections, which had previously improved plaintiff's pain.[50]

Dr. Crain reported on June 28, 2007 that plaintiff evidenced improvement through leg strengthening exercises and had less pain.[51]  Plaintiff complained of daily discomfort, particularly at night, and requested a cortisone injection.[52]  Dr. Crain's

---

[42] *Id.*
[43] *Id.* at 271.
[44] *Id.*
[45] *Id.* at 272.
[46] *Id.*
[47] *Id.*
[48] *Id.*
[49] *Id.*
[50] *Id.* at 340-41.
[51] *Id.* at 361.
[52] *Id.*

evaluation on August 9, 2007 found post-injection improvement, swelling from the calf to her feet,[53] with no knee edema and good range of motion and less tenderness.[54]

A state agency physician, Vinod Kataria, M.D., reviewed plaintiff's claim for benefits on October 2, 2007,[55] and found she could occasionally lift and/or carry a maximum of 10 pounds, frequently lift and/or carry 10 pounds, stand and/or walk (with normal breaks) for at least two hours in an eight-hour workday, and sit (with normal breaks) for six hours in an eight-hour workday, with unlimited push and/or pull (including operation of hand/foot controls).[56]   From his review of her medical record, he concluded the x-rays of the knees were normal with no signs of DJD, and although she evidenced bilateral quad contraction weakness and a patellofemoral contusion, there was no MSO.[57]   He found her partially credible, in the absence of objective evidence.[58]

Dr. Kataria further opined plaintiff had no manipulative limitations, including reaching all directions, handling, fingering, or feeling,[59] and concluded her physical residual functional capacity enabled her to perform light work with occasional postural maneuvers, except for climbing ladders/ropes/scaffolds, and avoiding concentrated exposure to vibration and hazards, such as machinery and heights.[60]

On October 15 2007, Dr. Crain reexamined, and found the "benefit of the injection is now wearing off."[61]   He repeated an injection series for her knee

---

[53] *Id.* at 392.
[54] *Id.*
[55] *Id.* at 373-78.
[56] *Id.* at 374.
[57] *Id.* at 375.
[58] *Id.*
[59] *Id.* at 376.
[60] *Id.* at 373-78.
[61] *Id.* at 391.

complaints.[62]  Increased crepitation was evident in both knees, but generally they were stable with no effusion.[63]  Pain in the patellofemoral area and weakness in the quads was elicited.[64]

On November 30, 2007, Dr. Callahan prepared another letter on plaintiff's behalf, essentially reiterating his prior findings.[65]  He concluded pain medication interfered with her ability to work, making future employment unlikely.[66]

Dr. Callahan's treatment notes of September 9, 2008 reflect plaintiff complained of numbness in her arms and parasthesias in both hands, which had previously been relieved by the injections.[67]

Plaintiff was treated by Eric T. Schwartz, M.D., of Delaware Orthopaedics and Sports Medicine, on November 3, 2008 for evaluation of bilateral knee pain and to review the results of an MRI conducted on October 20, 2008.[68]  Dr. Schwartz noted her complaints and overall condition were the same.[69]  As a result of his physical evaluation of the left knee, he diagnosed painful grinding and entrapment, with no intra-articular effusion or joint line tenderness.[70]  Examination of the right knee revealed painful grinding entrapment of the patella, absent intra-articular effusion.[71]  The MRI results of her right knee showed a small amount of joint fluid and low grade chondromalacia, with

---

[62] *Id.*
[63] *Id.*
[64] *Id.*
[65] *Id.* at 386-87.
[66] *Id.* at 387.
[67] *Id.* at 402.
[68] *Id.* at 404-05 (Dr. Schwartz's treatment notes state that plaintiff "returns today for re-evaluation," but the record contains no previous evidence of his treatment).
[69] *Id.* at 404.
[70] *Id.*
[71] *Id.*

no fracture or intraarticular loose body, and no medial or lateral meniscal tear or degeneration.[72]  Dr. Schwartz diagnosed bilateral knee patellofemoral syndrome,[73] but did not recommend an arthroscopy.[74]

On November 11, 2008, Dr. Callahan administered two trigger point injections in the bilateral trapezius muscle groups.[75]  Plaintiff returned to Dr. Callahan on January 8, 2009, and advised the numbness, tingling, and neck pain improved, but pain worsened in cold weather.[76]

On April 7, 2009, plaintiff admitted she obtained Dilauded from a friend, which "worked better than Percocet."[77]  Dr. Callahan prescribed Dilauded until July 9, 2009,[78] when he re-prescribed Percocet.[79]  Plaintiff continued under Dr. Callahan's care for pain medications throughout 2009 and 2010.[80]  Dr. Callahan's last treatment note dated January 4, 2010, states plaintiff was doing "reasonably well," was able to perform her activities of daily living ("ADLs"), but she wanted injections.[81]

On April 4, 2010, Dr. Callahan completed a Physical Residual Functional Capacity Questionnaire ("RFC") at plaintiff's attorney's request.[82]  He concluded she was completely disabled.[83]  He found plaintiff had moderate depression and anxiety,

---

[72] *Id.*
[73] *Id.* at 405.
[74] *Id.*
[75] *Id.* at 425-26.
[76] *Id.* at 422.
[77] *Id.*
[78] *Id.*
[79] *Id.* at 421.
[80] *Id.* at 420-26.
[81] *Id.* at 420.
[82] *Id.* at 427-30.
[83] *Id.*

which affected her concentration,[84] and significant limitations for repetitive reaching, handling or fingering due to numbness in the hands and arms.[85]

Plaintiff did not return to Dr. Schwartz until April 6, 2010, almost one and one-half years after her prior visit in November 2008.[86]  During the April visit, plaintiff advised of continued pain which was tolerable.[87]  She requested a cortisone injection for the left knee,[88] which Dr. Schwartz administered, and plaintiff requested she continue with home exercises and activity modification.[89]  Dr. Schwartz assessed plaintiff as neurologically oriented in time, place and person, and her mood and affect as alert and cooperative, with no acute distress.[90]

### C.    The Administrative Law Hearing

#### 1.    Testimony of Plaintiff

Plaintiff testified at the administrative law hearing that her husband does the grocery shopping, and her niece assists with household chores.[91]  She claimed she can only drive short distances, although she drove to the hearing.[92]  She further testified her pain medication causes drowsiness and lightheadedness.[93]  In discussing her knee pain, she described the pain as constant and awakens her from sleep.[94]

Plaintiff claimed she experiences on average four migraine headaches per week,

---

[84] *Id.*
[85] *Id.* at 429.
[86] *Id.* at 432.
[87] *Id.*
[88] *Id.*
[89] *Id.* at 433.
[90] *Id.* at 432.
[91] *Id.* at 41.
[92] *Id.* at 42.
[93] *Id.*at 43.
[94] *Id.*

and suffers daily pain in her neck and back.[95]  She stated she takes Methadone for pain, which is less effective than it previously was.[96]  She annually undergoes three trigger point injections in her neck and back, which alleviates the numbness in her hands and arms.[97]  Although she used a cane at the hearing, it was not prescribed by any physician, but she claimed it was recommended because of weak knees.[98]  She testified Dr. Schwartz had recently advised her knees were severely arthritic, and would require bilateral knee replacements.[99]  She further claimed she could walk or stand continuously for about 15 minutes, only sit for 20 to 30 minutes, and could not kneel or stoop.

Regarding problems with her hands and fingers, she noted severe numbness and cramping.[100]  She chooses clothing that is easy to put on and does not require her to raise her head.  She needs assistance with buttoning,[101] and cannot lift or carry a gallon of milk.[102]  She is able to bathe herself, except for her legs or hair.[103]  Plaintiff maintained she has experienced major pain since the two motor vehicle accidents and the slip and fall.[104]

### 2.    Testimony of Vocational Expert

Beatty-Body, a vocational expert, also testified at the administrative hearing.[105] Beatty-Body acknowledged pain could cause difficulty with concentration, persistence,

---

[95] *Id.* at 44.
[96] *Id.*
[97] *Id.* at 44-45.
[98] *Id.* at 46.
[99] *Id.*
[100] *Id.* at 48.
[101] *Id.*
[102] *Id.* at 49.
[103] *Id.* at 50.
[104] *Id.*
[105] *Id.* at 51-56.

and pace, and attending to job duties.  If pain reduced productivity by more than 15 to 20 percent, it would be work preclusive."[106]  The ALJ asked Beatty-Body whether a "hypothetical . . . younger individual, with a high school-plus education, and past relevant work history similar to that of the [plaintiff]," with symptoms and limitations similar to those asserted by plaintiff during the hearing, would be capable fo doing any jobs.  The vocational expert responded in the negative, because such pain would cause a reduction in productivity of more than 15 to 20 percent, precluding any employment, and may also cause excessive absences.[107]

The ALJ asked the vocational expert to assume an individual of plaintiff's age, education, and experience, who was restricted to simple, routine sedentary work with a sit/stand option.[108]  Despite those limitations, the vocational expert concluded such an individual could perform sedentary work as a microfilm document scanner, addressing clerk, and final assembler.[109]  She further testified that use of a cane would not have any adverse impact on those representative jobs.[110]  The vocational expert, however, continued that if the individual required a 10-minute off-task break, this additional break would preclude employment.[111]  Finally, she stated the limitations described in the RFC questionnaire completed by Dr. Callahan would also preclude employment.[112]

D.    The ALJ's Decision

Based on the evidence and testimony, the ALJ determined in his April 30, 2010

---

[106] *Id.* at 52.
[107] *Id.* at 52-53.
[108] *Id.* at 53.
[109] *Id.* at 53-54.
[110] *Id.* at 54.
[111] *Id.* at 55.
[112] *Id.* at 56.

opinion,[113] that plaintiff was not disabled, and not entitled to DIB.[114]  The ALJ's findings are summarized as follows:

1.  The claimant last met the insured status requirements of the Social Security Act on September 30, 2008.

2.  The claimant did not engage in substantial gainful activity during the period from amended alleged onset date of May 24, 2007 through her date last insured of September 30, 2008 (20 CFR 404.1571 *et seq.*).

3.  Through the date last insured, the claimant had the following severe impairments: Cervical Facet and Myofascial Pain Syndromes with cervical disc protrusions, a history of migraine headaches, and Bilateral Patellofemoral Syndrome(20 CFR 404.1520(c)).

4.  Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant has the residual functional capacity to perform a significant range of simple, routine, unskilled sedentary work as those terms are defined in 20 CRF 404.1567(a).

6.  Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born on December 15, 1961 and was 46 years old, which is defined as a younger individual age 18-44, on the date last insured (20 CFR 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

---

[113] *Id.* at 14-33.
[114] D.I. 10 at 23.

10.   Through the date last insured, considering the claimant's age, education, work experience, and residual function capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11.   The claimant was not under a disability, as defined in the Social Security Act, at any time from May 24, 2007, the amended alleged onset date, through September 30, 2008, the date of last insured (20 CFR §§ 404.1520(g)).

## III.   JURISDICTION

A district court's jurisdiction to review an ALJ's decision regarding disability benefits is controlled by 42 U.S.C. § 405(g).  The statute provides "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain review of such decision by a civil action."[115]  The Commissioner's decision becomes final when the Appeals Counsel affirms an ALJ opinion, denies review of an ALJ decision, or when a claimant fails to pursue available administrative remedies.[116]  In the instant matter, the Commissioner's decision became final when the Appeals Counsel affirmed the ALJ's denial of benefits.  Thus, this court has jurisdiction to review the ALJ's decision.

## IV.   PARTIES' CONTENTIONS

### A.   Plaintiff's Contentions

Plaintiff urges remand based on the following reasons:[117]  (1) the ALJ failed to accommodate her hand and arm impairments; (2) the ALJ failed to properly consider the side effects of the pain medications; and (3) the ALJ failed to properly consider

---

[115] 42 U.S.C. § 405(g) (2002).

[116] *Aversa v. Secretary of Health & Human Services*, 672 F.Supp. 775, 777 (D.N.J. 1987); *see also* 20 C.F.R. § 404.905 (2002).

[117] D.I. 14.

mental limitations caused by debilitating pain.

Plaintiff initially contends because the ALJ failed to properly consider her hand and arm impairments, remand is needed for further consideration of the specific limitations caused by her severe cervical facet syndrome.[118] The ALJ erred in according "little weight"[119] to Dr. Callahan's opinion by failing consider her reaching limitations,[120] and by finding that she had "no push/pull, grasping, handling, or manipulative limitations."[121]

As a result, plaintiff maintains the ALJ's decision should be overturned, as he failed to consider relevant and potentially work-preclusive limitations by the treating physician.  In support, plaintiff relies on Social Security Ruling ("SSR") 96-5p, which requires the Commissioner to evaluate all medical opinions, and not "ignore opinions even in regard to issues that are reserved to the Commissioner."[122]  Although the ALJ relied primarily on Dr. Callahan's report that plaintiff could perform activities of daily living,[123] he misstates her ability to perform these activities.[124]  The ALJ failed to consider her reaching limitations and did not reject Dr. Callahan's opinion in that regard; however, he omitted any explanation for his finding that plaintiff could perform the frequent reaching required by the jobs identified by the vocational expert.

Refuting defendant's contention that Dr. Callahan's RFC is irrelevant because it

---

[118] D.I. 14 at 3-5.
[119] D.I. 11 at 25 (stating Dr. Callahan's opinion was unsupported by treatment records or medical findings, and inconsistent with reports of plaintiff's ability to perform activities of daily living).
[120] D.I. 14 at 3.
[121] *Id.*
[122] *See* SSR 96-5P, 1996 WL 374183, at *3.
[123] D.I. 11 at 25.
[124] D.I. 14 at 4.

was rendered after expiration of her last insured date, plaintiff argues the assessment is relevant because it is consistent with his prior treatment.[125]  Plaintiff relies on *SEC v. Chenery Corp.* which found that "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."[126]  Because the ALJ never determined the doctor's assessment was irrelevant due to timing, plaintiff reasons defendant's argument is misplaced.[127]  Plaintiff concludes remand is necessary for further consideration of the specific limitations caused by her severe cervical facet syndrome.[128]

Plaintiff next contends the ALJ failed to properly consider the side effects of her pain medications.[129]  Plaintiff argues the regulations and this circuit's precedent require an ALJ to address the effectiveness and side effects of a claimant's medications. Despite noting that her medications cause drowsiness and fatigue, the ALJ nonetheless made no accommodations for such symptoms, and found she was capable of performing simple, routine, unskilled work.[130]  Therefore, remand to determine how her ability to work would be affected by the side effects of the medications is required.[131]

Finally, plaintiff argues the ALJ failed to properly consider the mental limitations caused by debilitating pain.[132]  Despite the vocational expert's testimony, the ALJ gave little consideration to her pain.  Although he recognized her mental capacity for work

---

[125] D.I. 18 at 1-2.
[126] 318 U.S. 80, 87 (1943).
[127] D.I. 18 at 2.
[128] D.I. 14 at 5.
[129] *Id.* at 5-6.
[130] *Id.* at 6.
[131] *Id.*
[132] *Id.*

would be affected by her pain, he found she was not disabled and employable.[133]  The ALJ failed to address the effect of her pain in relation to excessive absenteeism or on attention or concentration.[134]  Plaintiff contends the ALJ's finding that she "alleged no memory, concentration, or attention deficits," is contradicted by the record, specifically in her initial disability reports.[135]  Moreover, the ALJ never inquired about her mental limitations during the administrative hearing.[136]  Remand is necessary to assess how pain interferes with the mental demands of work.[137]

### B.    Defendant's Contentions

Defendant maintains substantial evidence supports the ALJ's findings that plaintiff could perform the limited range of sedentary work identified by the vocational expert.[138]  Defendant argues:  (1) the medical evidence and findings of record support the ALJ's decision that plaintiff is not disabled; (2) the ALJ appropriately considered her hand and arm complaints, and (3) the ALJ properly considered the effects of the pain medications.[139]

First, defendant observes plaintiff was treated conservatively and never referred for surgery.[140]  She was never treated for any mental health complaints, and a state agency physician found she could perform a limited range of light work.[141]  Thus, the ALJ accounted for her physical and mental complaints as supported by the record by

---

[133] *Id.*
[134] *Id.* at 7.
[135] *Id.*
[136] *Id.*
[137] *Id.*
[138] D.I. 17 at 9.
[139] *Id.* at 9-13.
[140] *Id.* at 9.
[141] *Id.*

restricting employment to a limited range of sedentary work.[142]

Second, defendant argues the ALJ appropriately considered plaintiff's hand and arm complaints, and was not required to accept the reaching limitations determined by Dr. Callahan,[143] in an opinion rendered in April 2010, almost one and one-half years after her insured status expired.  Dr. Callahan's assessment is immaterial to the relevant time period.[144]  Moreover, Dr. Callahan's reaching limitations are unsupported by his own treatment notes.[145]  Finally, a state agency physician in October 2007, during the relevant period, specifically opined plaintiff did not have any reaching, handling, fingering, or feeling limitations.[146]  As a result, defendant argues the ALJ was not required to impose any additional limitations based on plaintiff's hand and arm complaints.[147]

Third, defendant asserts the ALJ properly considered her pain medication, because the jobs identified appropriately reflected any limitations, and her treatment records do not support any additional restrictions due to the alleged side effects.[148] Finally, defendant maintains the ALJ properly accounted for plaintiff's mental limitations, specifically difficulties in concentration, by confining her type of work.[149]  Refuting plaintiff's argument that the ALJ should have inquired about her mental limitations, defendant counters the burdens of production and proof in a disability determination

---

[142] *Id.*
[143] D.I. 17 at 9-10.
[144] *Id.* at 10.
[145] *Id.*
[146] *Id.*
[147] *Id.*
[148] *Id.* at 10-11.
[149] *Id.* at 11.

proceeding rest with plaintiff,[150] because she is "in a better position to provide

information about [her] own medical condition."[151]   Because plaintiff's arguments are

baseless, the opinion of the ALJ should be affirmed.

## V.     STANDARD OF REVIEW

### A.     Summary Judgment

In determining the appropriateness of summary judgment, the court must "review

the record as a whole, 'draw[ing] all reasonable inferences in favor of the nonmoving

party[,]' but [refraining from] weighing the evidence or making credibility

determinations."[152]  If there is no genuine issue as to any material fact and the movant is

entitled to judgment as a matter of law, summary judgment is appropriate.[153]

This standard does not change merely because there are cross-motions for

summary judgment.[154]  Cross-motions for summary judgment

> are no more than a claim by each side that it alone is entitled to summary
> judgment, and the making of such inherently contradictory claims does not
> constitute an agreement that if one is rejected the other is necessarily justified or
> that the losing party waives judicial consideration and determination whether
> genuine issues of material fact exist.[155]

"The filing of cross-motions for summary judgment does not require the court to grant

summary judgment for either party."[156]

### B.     ALJ's Findings

Section 405(g) sets forth the standard of review of the ALJ's decision by the

---

[150] D.I. 17 at 12 (citing 42 U.S.C. § 423(d)(5)(A)).

[151] *Id.* (citing *Bowen v. Yuckert*, 482 U.S. 137, 147 n.5 (1987); 20 C.F.R. § 404.1512(a)).

[152] *Reeves v. Sanderson Plumbing, Prods., Inc.*, 530 U.S. 133, 150 (2000).

[153] *See Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (quoting FED. R. CIV. P. 56(c)).

[154] *Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).

[155] *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968).

[156] *Krupa v. New Castle County*, 732 F. Supp. 497, 505 (D. Del. 1990).

district court.  The court may reverse the Commissioner's final determination only if the ALJ did not apply the proper legal standards, or the record did not provide substantial evidence to support the ALJ's decision.  The Commissioner's factual decisions are upheld if supported by substantial evidence.[157]  Substantial evidence means less than a preponderance, but more than a mere scintilla of evidence.[158]  As the United States Supreme Court has found, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[159]

In determining whether substantial evidence supports the Commissioner's findings, the court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record.[160]  The court's review is limited to the evidence that was actually presented to the ALJ.[161]  The Third Circuit has explained that a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence, particularly certain types of evidence (e.g., evidence offered by treating physicians) or if it really constitutes not evidence but mere conclusion."[162]  Thus, the inquiry is not whether the court would have made the same determination, but rather whether the Commissioner's conclusion was

---

[157] *See* 42 U.S.C. *§§* 405(g), 1383(c)(3); *see also Monsour Medical Center v. Heckle*m, 806 F .2d 1185, 1190 (3d Cir. 1986).

[158] *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).

[159] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[160] *See Monsour*, 806 F.2d at 1190.

[161] *See Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2001)

[162] *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).

reasonable.[163]  Even if the court would have decided the case differently, it must defer to

the ALJ, and affirm the Commissioner's decision so long as that decision is supported

by substantial evidence.[164]

When review of an administrative determination is sought, the agency's decision

cannot be affirmed on a ground other than that actually relied upon by the agency in

making its decision.[165]  In *Securities & Exchange Commission v. Chenery Corp.*,[166] the

Supreme Court found that a "reviewing court, in dealing with a determination or

judgment which an administrative agency alone is authorized to make, must judge the

propriety of such action solely by the grounds invoked by the agency.  If those grounds

are inadequate or improper, the court is powerless to affirm the administrative action by

substituting what it considers to be a more adequate or proper basis."[167]  The Third

Circuit has recognized the applicability of this finding in the Social Security disability

context.[168]  Thus, this court's review is limited to the four corners of the ALJ's

decision.[169]

## VI.    DISCUSSION

### A.    Disability Determination

Title 11 of the Social Security Act, 42 U.S.C. § 423(a)(l)(D), "provides for the

payment of insurance benefits to persons who have contributed to the program and who

---

[163] *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).
[164] *See Monsour*, 806 F .2d at 1190-91.
[165] *See Hansford v. Astrue*, 805 F. Supp. 2d 140, 144-45 (W.D. Pa. 2011).
[166] *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947).
[167] *Id.*
[168] *Fargnoli v. Massanari*, 247 F.3d 34, 44, n.7 (3d Cir. 2001).
[169] *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D. Pa. 2005).

suffer from a physical or mental disability."[170]   In order to qualify for DIB, the claimant

must establish that she was disabled prior to the date she was last insured.[171]   A

"disability" is defined as the inability to do any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of

not less than 12 months.[172]   A claimant is disabled "only if [her] physical or mental

impairment or impairments are of such severity that [she] is not only unable to do [her]

previous work but cannot, considering [her] age, education, and work experience,

engage in any other kind of substantial gainful work which exists in the national

economy."[173]

        In determining whether a person is disabled, the Commissioner is required to

perform a five-step sequential analysis.[174]   If a finding of disability or non-disability can

be made at any point in the sequential process, the Commissioner will not review the

claim further.[175]   At step one, the Commissioner must determine whether the claimant is

engaged in any substantial gainful activity.  If the claimant is engaged in substantial

gainful activity, a finding of non-disabled is required.[176]   If the claimant is not engaged in

substantial gainful activity, step two requires the Commissioner to determine whether

the claimant is suffering from a severe impairment or a combination of impairments that

is severe.  If the claimant is not suffering from a severe impairment or a combination of

---

[170] *Bowen*, 482 U.S. at 140.
[171] *See* 20 C.F.R. § 404.131.
[172] *See* 42 U.S.C. §§ 423(d)(l)(A), 1382(c)(a)(3).
[173] 42 U.S.C. § 423(d)(2)(A); *Barnhart v. Thomas,* 540 U.S. 20, 21-22 (2003).
[174] *See* 20 C.F.R. § 404.1520; *see also Plummer v. Apfel*, 186 F.3d 422,427-28 (3d Cir. 1999).
[175] 20 C.F.R. § 404.1520(a)(4).
[176] *See* 20 C.F.R. § 404.1520(a)(4)(i).

impairments that is severe, a finding of non-disabled is required.[177]

     If the claimant's impairments are severe, the Commissioner, at step three, compares the claimant's impairments to a list of impairments (the "listings") that are presumed severe enough to preclude any gainful work.[178]  When a claimant's impairment or its equivalent matches an impairment in the listing, the claimant is presumed disabled.[179]  If a claimant's impairment, either singularly or in combination, fails to meet or medically equal any listing, the analysis continues to steps four and five.[180]  At step four, the Commissioner determines whether the claimant retains the RFC to perform his past relevant work.[181]  A claimant's RFC is "that which an individual is still able to do despite the limitations caused by [his] impairment(s)."[182]  "The claimant bears the burden of demonstrating an inability to return to [his] past relevant work."[183]

     If the claimant is unable to return to his past relevant work, step five requires the Commissioner to determine whether the claimant's impairments preclude him from adjusting to any other available work.[184]  At this last step, the burden is on the Commissioner to show the claimant is capable of performing other available work before denying disability benefits.[185]  In other words, the Commissioner must prove "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with [his] medical impairments, age, education, past

---

[177] *See* 20 C.F.R. §404.1520(a)(4)(ii).

[178] *See* 20 C.F.R. § 404.1520(a)(4)(iii); *see also Plummer*, 186 F.3d at 428.

[179] *See* 20 C.F.R. § 404.1520(a)(4)(iii).

[180] *See* 20 C.F.R. § 404.1520(e).

[181] *See* 20 C.F.R.. § 404.1520(a)(4)(iv); *Plummer*, 186 F.3d at 428.

[182] *Fargnoli*, 247 F.3d at 40.

[183] *Plummer*, 186 F.3d at 428.

[184] *See* 20 C.F.R. § 404.1520(g) (mandating finding of non-disability when claimant can adjust to other work); *see also Plummer*, 186 F.3d at 428.

[185] *See id.*

work experience, and [RFC]."[186]  In making this determination, the ALJ must analyze the cumulative effect of all of the claimant's impairments.[187]  At this step, the ALJ often seeks the assistance of a vocational expert.[188]

**B.    Plaintiff's Hand and Arm Limitations**

**1.    Residual Functional Capacity Determination**

"'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[189]  In this case, the ALJ determined plaintiff had a RFC to perform "a significant range of simple, routine, unskilled sedentary work."[190]  The SSA defines work as "sedentary" when it:

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.[191]

> The ALJ further specified plaintiff had the

> "residual functional capacity to lift and carry up to 10 pounds and that she is able to sit for up to 6 hours and that she can stand/walk for at least 2 hours during the course of an ordinary 8-hour workday.  The claimant has no push/pull, grasping, handling or manipulative limitations, but she is able to perform postural activities only occasionally.  Finally, due to the combination of her impairments and her use of narcotic and opioid pain medications, the claimant cannot climb to or work at heights or with hazardous or vibrating machinery."[192]

---

[186] *Id.*

[187] *See id.*

[188] *See id.*

[189] *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000); *see also Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir.1999) (citing 20 C.F.R. § 404.1545(a)).

[190] D.I. 11 at 23-26.

[191] 20 C.F.R. § 404.1567.

[192] D.I. 11 at 25.

Plaintiff argues that despite the ALJ's acknowledgment of her severe cervical facet syndrome, he failed to accommodate the hand and arm limitations arising from this impairment in his determination of her RFC.[193]  Defendant maintains the ALJ appropriately considered such restrictions, and his determination is supported by substantial evidence.[194]

After reviewing the record, the court is unable to determine whether the ALJ's finding that plaintiff can perform sedentary work is supported by substantial evidence because he failed (1) to adequately evaluate all relevant evidence and to explain the basis of his conclusions, and (2) to adequately explain his assessment regarding the credibility of, and weight given to, the medical evidence and opinions from plaintiff's treating physician that contradicts his finding that plaintiff can perform sedentary work. The court remands this matter to the ALJ for further proceedings.

### a.   The ALJ's duty to evaluate evidence and provide the basis for his conclusions

It is well settled that the ALJ must consider all relevant evidence when determining an individual's RFC in step four.[195]  That evidence includes medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others.[196]  In *Adorno v. Shalala*, the Third Circuit set aside an ALJ's determination for failure to address and refute contradictory medical evidence before him.[197]  The court held the

---

[193] D.I. 14 at 3-5.  *See also* D.I. 18.
[194] D.I. 17 at 10.
[195] *See Fargnoli*, 247 F.3d at 41.  *See also* 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a), 404.1546; *Burnett*, 220 F.3d at 121.
[196] *Fargnoli*, 246 F.3d at 41 (citing 20 C.F.R. § 404.1545(a)).
[197] *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994).

"ALJ must review all the medical findings and other evidence presented in support of the attending physician's opinion of total disability."[198]  Similarly, the ALJ must also consider and weigh all of the non-medical evidence before him.[199]

In *Burnett v. Commissioner of Social Security Administration*, the Third Circuit found the "ALJ did err by reason of his failure to consider and explain his reasons for discounting all of the pertinent evidence before him in making his residual functional capacity determination."[200]  Although the ALJ may determine the credibility, he must indicate that evidence he rejects and his reasons for discounting it.[201]  "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored."[202]

The ALJ's finding of RCF must "be accompanied by a clear and satisfactory explication of the basis on which it rests."[203]  Under this circuit's law, "an examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision."[204]  Such analysis "is necessary so that the court may properly exercise its responsibility under 42 U.S.C. § 405(g) to determine if the Secretary's decision is supported by substantial evidence."[205]

---

[198] *Id.* (internal citations omitted).
[199] *See Burnett*, 220 F.3d at 122 (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir.1983)). *See also Cotter v. Harris*, 642 F.2d 700, 707 (3d Cir.1981).
[200] *See id.*
[201] *Id.* (citing *Plummer*, 186 F.3d at 429; *Cotter,* 642 F.2d at 705).
[202] *See id.* (citing *Cotter*, 642 F.2d at 705).
[203] *Fargnoli*, 246 F.3d at 41 (citing *Cotter*, 642 F.2d at 704).
[204] *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974).
[205] *Id.*

Here, in making his determination of plaintiff's RFC, the ALJ failed to account for her hand and arm limitations.  Regarding Dr. Callahan's April 2, 2010 RFC Assessment,[206] the ALJ considered and rejected the physician's description of plaintiff's limitations on walking, standing, elevating her feet, and using a cane.[207]  The ALJ completely failed, however, to acknowledge her hand and arm limitations, which were well-documented in the same assessment.[208]  In making his RFC determination, the ALJ concluded, without explanation, that plaintiff "has no push/pull, gasping, handling, or manipulative limitations."[209]

The ALJ thus failed to consider all relevant evidence when determining plaintiff's RFC in step four.[210]  The reaching limitation was significant, given the diagnosis accepted by the ALJ of severe cervical facet syndrome.[211]  Plaintiff's hand and arm condition should have been addressed and either accepted or rejected.

Plaintiff's hand and arm limitation is amply supported by the medical record.  Dr. Callahan's April 2, 2010 assessment stated plaintiff had significant restrictions in repetitive reaching, handling or fingering.[212]  He further concluded plaintiff could grasp, turn and twist objects with her hands 75 percent of the time during an eight hour working day, and use her fingers for fine manipulations 100 percent of the time, but could never reach with her arms.[213]  In virtually ignoring that limitation, the ALJ failed to

---

[206] D.I. 11 at 427-30.
[207] *Id.* at 25.
[208] *Id.* at 427-30.
[209] *Id.* at 25.
[210] *See Fargnoli,* 247 F.3d at 41.  *See also* 20 C.F.R.  §§ 404.1527(e)(2), 404.1545(a), 404.1546; *Burnett*, 220 F.3d at 121.
[211] D.I. 11 at 19-22.
[212] *Id.* 429.
[213] *Id.* at 429.

appropriately "review all the medical findings and other evidence presented in support of the attending physician's opinion of total disability."[214]

Defendant's argument that Dr. Callahan's April 2010 opinion is irrelevant because it was rendered after plaintiff's insurance status expired is misplaced.[215]  The ALJ never discounted Dr. Callahan's opinion for that reason.[216]  Instead, he considered select portions of that opinion and rejected them.[217]  Defendant's ad hoc justification for the ALJ's decision is therefore rejected.[218]

In addition to the April 2010 assessment, there are numerous other references throughout the medical record concerning limitations of plaintiff's hands and arms.  In May 2007, Dr. Callahan noted that despite improvement, "some level of pain is present . . . on a daily basis."[219]  He concluded her underlying condition "will probably never resolve and potentially can get worse over time."[220]  He repeated those findings in November 2007.[221]

Dr. Callahan's treatment record is replete with notations of hand and arm pain/numbness,[222] specifically on April 18, 2007,[223] November 30, 2007,[224] February 15,

---

[214] *See Adorno*, 40 F.3d at 48.

[215] D.I. 17 at 9-10.

[216] D.I. 11 at 14-33.

[217] D.I. 11 at 25.

[218] *See Chenery*, 332 U.S. at 196 ("[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.")

[219] D.I. 11 at 272.

[220] *Id.*

[221] *Id.* at 386.

[222] *Id.* at 398-402, 420-26.

[223] *Id.* at 270.

[224] *Id.* 386.

2008, and January 8, 2009.[225]  Although the injections temporarily alleviated numbness and parasthesias in her arms and hands,[226] occasional improvement does not undermine his lengthy treatment and consistent diagnoses of limitations.

Plaintiff's subjective complaints of arm and hand numbness are similarly well-documented.  In the May 11, 2007 function report, she claimed to suffer from "numbness, tingling [and] cramping in both arms in hands in the morning."[227]  She notes similar complaints in her disability report.[228]  Plaintiff reiterated the same complaints in the June 25, 2007 function report,[229] and in a subsequent disability appeal form, she again noted "difficulty holding things due to numbness and cramping in hands and arms, which makes it difficult to combing [sic] my hair, bathe, and get dressed."[230]

In coming to his ultimate conclusion regarding plaintiff's RFC, the ALJ appears to focus on Dr. Callahan's comments that plaintiff could perform daily living activities,[231] emphasizing she was "independent in her bathing, dressing and eating."[232]  He did not, however, address her statements on her limited ability to perform such activities. During the hearing, plaintiff testified her niece assisted with hair care, washing her lower extremities and dressing.[233]  Plaintiff's claims of arm and hand pain and other subjective symptoms are consistent with the medical evidence,[234] and even if they are not, the ALJ

---

[225] *Id.* at 422.
[226] *Id.* at 402.
[227] *Id.* at 152
[228] *Id.* at 164.
[229] *Id.* at 182.
[230] *Id.* at 220.
[231] *Id.* at 25.
[232] *Id.* at 24.
[233] *Id.* at 48-49.
[234] *Hartranft*, 181 F.3d at 362 (citing 20 C.F.R. § 404.1529).

was required to explain why he seemingly rejected her testimony.[235]

Plaintiff's hand and arm complaints were well documented, observed and described by plaintiff and her physicians.[236]  Similar to *Adorno*[237] and *Burnett*,[238] in the instant matter, the ALJ failed to evaluate and address medical evidence contrary to his findings to enable the court to "properly exercise its responsibility under 42 U.S.C. § 405(g) to determine if the Secretary's decision is supported by substantial evidence."[239] As a result, this court cannot assess whether the ALJ's determination that plaintiff has the residual functional capacity to perform "a significant range of simple, routine, unskilled sedentary work" is supported by substantial evidence.

### b.    The ALJ's duty to assess credibility of and explain weight applied to conflicting medical evidence

When determining plaintiff's RFC, the ALJ accorded "little weight to the sympathetic but medically-unsupported opinions of Dr. Callahan."[240]  Instead, he found the opinion of the non-examining state agency medical consultant, "more accurately reflects the claimant's work-related abilities and limitations," according "Dr. Kataria's opinion significant weight in the determination of this matter."[241]

Under this circuit's precedent, "[t]reating physicians' reports should be accorded great weight, especially 'when their opinions reflect expert judgment based on a

---

[235] *Van Horn*, 717 F.2d at 873.
[236] *Fargnoli*, 246 F.3d at 41 (citing 20 C.F.R. § 404.1545(a)).
[237] *Adorno*, 40 F.3d at 48.
[238] *See Burnett*, 220 F.3d at 121.  *See also supra notes* 210-35 and accompanying text.
[239] *Id.*
[240] D.I. 11 at 25.
[241] *Id.*

continuing observation of the patient's condition over a prolonged period of time.'"[242]   A court must give greater weight to the findings of a treating physician than to those of a doctor who examined the claimant only once or not at all.[243]   When a physician has treated a patient over an extended period of time, his opinion usually should be afforded great weight.[244]   A treating physician's opinion is given "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [in the claimant's] case record."[245]

A final disability determination must not conflict with an opinion deserving of controlling weight.  An ALJ may reject a treating physician's opinion "only on the basis of contradictory medical evidence."[246]   That opinion may not be rejected for no reason or the wrong reason.[247]   When there is contradictory medical evidence, the ALJ must carefully evaluate how much weight to give the treating physician's opinion, and provide an explanation as to why the opinion is not given controlling weight.[248]

"A decision not to give a treating physician's opinion controlling weight must not automatically become a decision to give a treating physician's opinion no weight whatsoever."[249]   Instead, "treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR [§§ ] 404.1527 and 416.927."[250]   These factors include the treatment relationship, the length of treatment

---

[242] *Plummer v. Apfel*, 186 F .3d 422, 429 (3d Cir. 1999) (quoting *Rocco v. Heckler*, 826 F .2d 1348, 1350 (3d Cir. 1987)).
[243] *Mason*, 994 F .2d at 1067.
[244] *See Dass v. Barnhart*, 386 F. Supp 2d 568, 576 (D. Del. 2005).
[245] *Fargnoli v. Massanari*, 247 F.3d 34,43 (3d Cir. 2001).
[246] *Morales v. Apfel*, 225 F.3d 310, 318 (3d Cir. 2000).
[247] *Id.* at 317.
[248] *Gonzalez*, 537 F. Supp. 2d at 660.
[249] *Id.*
[250] *Id.*

relationship, the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion afforded by the medical evidence, consistency of the opinion with the record as a whole, and specialization of the treating physician.[251]

Here, more than little weight should have been applied to the treating physician's opinion.[252]  Dr. Callahan's opinion, particularly in terms of his assessment regarding plaintiff's hand and arm limitations, is "not inconsistent with the other substantial evidence" in the record.[253]  As discussed herein, the ALJ seemingly ignored Dr. Callahan's RFC assessment regarding plaintiff's hand and arm conditions.  Despite failing to consider Dr. Callahan's entire assessment, the ALJ nonetheless chose to give controlling weight to the opinion of the state agency physician.[254]

In support of his determination that the state agency physician was more credible than Dr. Callahan, the ALJ simply stated that "Dr. Kataria considered the claimant's chronic headaches, her cervical impairment, and the claimant's complaints of severe knee pain in light of the generally benign medical findings of record, and he concluded that the claimant retains the capacity to perform a significant range of sedentary work activities,"[255] commenting "the undersigned agrees."[256]

Such a brief justification for his decision to adopt contradictory medical evidence does not constitute a careful evaluation or a sufficient explanation as to why Dr.

---

[251] *Id.*
[252] D.I. 11 at 25.
[253] *Fargnoli*, 247 F.3d at 43.  See also D.I. 11 at 152, 164, 180, 182, 196, 217, 270, 386, 401, 402, 422.
[254] D.I. 11 at 25.
[255] *Id.*
[256] *Id.*

Callahan's opinion was not given controlling weight.[257]  Moreover, Dr. Kataria's opinion,

which stated plaintiff had no push and/or pull limitations or manipulative limitations,[258]

conflicts with the extensive record of her hand and arm limitations.[259]

Even when the treating source opinion is not given controlling weight, the ALJ

must apply several factors in deciding how much weight to assign it.[260]  Here, the ALJ

failed so do so, as he merely commented that "[n]owhere are these asserted limitations

apparent in Dr. Callahan's treatment records that repeatedly reference the claimant's

ability to 'perform ADLs,' nor are these limitations consistent with the reported medical

findings of record."[261]  Dr. Callahan began treating plaintiff in 2002 which continued into

2010.[262]  Plaintiff visited Dr. Callahan on regular basis, during which time she was

examined, prescribed medications, and underwent cervical point injections.[263]  Finally,

Dr. Callahan's assessment of plaintiff's arm and hand limitations were supported by

medical evidence, and consistent with the diagnosis of cervical facet syndrome.[264]

Because treating source medical opinions are still entitled to some deference, and the

ALJ failed consider Dr. Callahan's opinion by applying the elements of 20 C.F.R. §§

404.1527 and 416.927,[265] the ALJ's assessment regarding Dr. Callahan's limited

credibility is not supported by substantial evidence.  On remand, the ALJ should

---

[257] *Gonzalez,* 537 F. Supp. 2d at 660.
[258] D.I. 11 at 374-76.
[259] *See supra* notes 210-35 and accompanying text.
[260] *Id.*
[261] D.I. 11 at 25.
[262] *Id.* at 271.
[263] *See id.* at 44-45
[264] *Id.* at 386-87.
[265] *Gonzalez*, 537 F. Supp. 2d at 660.

carefully consider both Dr. Kataria[266] and Dr. Callahan's[267] reports and specifically discuss the basis, if any, for rejecting the opinions offered by Dr. Callahan.

## 2.    Assessment of Plaintiff's Employability

The ALJ found the vocational expert testified that a hypothetical individual with plaintiff's age, education, work experience, and RFC was employable in certain sedentary unskilled occupations.[268]  Consequently, he determined plaintiff was "capable of making a successful adjustment to other work that existed in significant numbers in the national economy."[269]

In this final step of the sequential evaluation process for determining whether a claimant is disabled, the ALJ "must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled."[270]  When a claimant has established that she is unable to return to her past employment, the ALJ has the burden to show that there is other employment that the claimant is capable of performing.[271]

In order to meet the burden of production at step five of the sequential analysis, the Commissioner needs to identify at least one occupation that exists in significant numbers in the national economy that a claimant can perform.[272]  A vocational expert's answer to a hypothetical question may be considered substantial evidence only when

---

[266] D.I. 11 at 373-78.
[267] *Id.* at 427-30.
[268] *Id.* at 27.
[269] *Id.*
[270] *Plummer*, F.3d at 428 (citing 20 C.F.R. § 404.1523).
[271] *Id.* at 429 (citing *Ferguson v. Schweiker*, 765 F.2d 31, 36 (3d Cir. 1981).
[272] *See Craigie v. Bowen*, 835 F.2d 56, 58 (3d Cir.1987).

34

the question reflects all of a claimant's impairments supported by the record.[273]  The ALJ
need not include any impairments and limitations that are not "medically established" by
the record.[274]  It is the duty of the ALJ alone to determine the claimant's limitations and
RFC.[275]

Because the court has already determined that the ALJ improperly assessed
plaintiff's RFC, the ALJ's finding regarding employment must necessarily be reversed.
Specifically, the ALJ failed to consider plaintiff's hand and arm limitations, which were
not accommodated when determining her ability to perform other work, since each job
considered required frequent reaching,[276] which is defined as reaching 1/3 to 2/3 of the
time.[277]  Because "a vocational expert's answer to a hypothetical question can be
considered substantial evidence only when the question reflects all of a claimant's
impairments that are supported by the record,"[278] and the hypothetical question failed to
consider plaintiff's hand and arm limitations,[279] the ALJ's employment determination is
not supported by substantial evidence.

### C.    Side Effects of Medication

Plaintiff argues the ALJ failed to properly consider the side effects of her
medications.[280]  Defendant maintains the ALJ accounted for these limitations, and his
assessment is supported by substantial evidence.[281]  The court finds the ALJ properly

---

[273] *See Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir.1987).
[274] *See Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir.2005).
[275] *See* 20 C.F.R. §§ 404.1545, 404.1546, 416.945, 416.946.
[276] D.I. 11 at 53-54.
[277] DICTIONARY OF OCCUPATIONAL TITLES (Dep't of Labor, 4th ed., 1991) §§ 249.587-018 (microfilm document preparer), 209.587-010 (addresser), 713.687-018 (final assembler).
[278] *Chrupcala*, 829 F.2d at 1276.
[279] D.I. 11 at 51-54.
[280] D.I. 14 at 5-7.
[281] D.I. 17 at 10-13.

considered the side effects of plaintiff's medications in making his determination.

The Commissioner's regulations and Third Circuit precedent require an ALJ to make findings regarding the effectiveness and side effects of medications.[282]  Under 20 C.F.R. § 404.1529(c)(3)(iv), in determining whether a claimant is disabled, the Commissioner will consider the type, dosage, effectiveness, and side effects of any medication the claimant takes or may have taken to alleviate pain or other symptoms.[283]

Plaintiff's medications include Methodone, Oxycodone and Robaxin.[284]  Dr. Callahan noted these medications cause drowsiness and lightheadedness.[285]  In making his assessment, the ALJ considered these side effects, and noted that "due to the combination of her impairments and her use of narcotic and opioid pain medications, the claimant cannot climb to or work at heights or with hazardous or vibrating machinery."[286]  None of the jobs identified by the vocational expert involve such activities.[287]

Moreover, the ALJ observed "the claimant's mental capacity for work is limited only by her pain and the side-effects of her medications, including drowsiness and fatigue,"[288] and ultimately found she could perform simple, routine, unskilled work.[289]  Because plaintiff's treatment records do not support any other effects from

---

[282] *Burnett*, 220 F. 3d at 122 n.3 (citing *Stewart v. Sec y of Health, Educ. and Welfare*, 714 F.2d 287, 290 (3d Cir. 1983)).  *See also Dougherty v. Astrue*, 715 F. Supp. 2d 572, 585 (D. Del. 2010); 20 C.F.R. § 404.1529(c)(3)(iv); SSR 96-7p, 1996 WL 374186.
[283] 20 C.F.R. § 404.1529(c)(3)(iv).
[284] D.I. 11 at 236.
[285] *Id.* at 427.
[286] *Id.* at 25.
[287] *Id.* at 53-54.  *See also* DICTIONARY OF OCCUPATIONAL TITLES (Dep't of Labor, 4th ed., 1991) §§ 249.587-018 (microfilm document preparer), 209.587-010 (addresser), 713.687-018 (final assembler).
[288] D.I. 11 at 26.
[289] *Id.*

medication,[290] by incorporating drowsiness and fatigue in his analysis, the ALJ accounted for the side effects plaintiff experienced.

### D.    Mental Limitations Caused by Pain

Finally, plaintiff argues the ALJ failed to properly consider mental limitations caused by pain.[291]  Defendant maintains the ALJ recognized such concerns, and his assessment is supported by substantial evidence.[292]  The court finds the ALJ properly considered the effect pain has on her mental capacity to work.

The Commissioner has acknowledged pain may cause both exertional and nonexertional limitations.[293]  Although allegations of pain and other subjective symptoms must be consistent with objective medical evidence,[294] the ALJ must still explain why he is rejecting such testimony.[295]

The burdens of production and proof in a disability determination proceeding rest with the claimant.[296]  Federal courts have tempered the statutory allocation by providing that where a claimant is unrepresented, the ALJ has an independent duty to develop the record.[297]  However, "[w]hen an applicant for social security benefits is represented by counsel the administrative law judge is entitled to assume that the applicant is making

---

[290] D.I. 11.

[291] D.I. 14 at 5-7.

[292] D.I. 17 at 10-13.

[293] *See* 20 C.F.R. § 404.1569a(a) (explaining that pain may cause exertional or nonexertional limitations).  *See also* SSR 96-8p, 1996 WL 374184, at *1 ("Medical impairments and symptoms, including pain, are not intrinsically exertional or nonexertional.  It is the functional limitations or restrictions caused by medical impairments and their related symptoms that are categorized as exertional or nonexertional.").

[294] *See Hartranft*, 181 F.3d at 362 (citing 20 C.F.R. § 404.1529).

[295] *See Van Horn*, 717 F.2d at 873.

[296] 42 U.S.C § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless [s]he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.").

[297] *Ferguson v. Schweiker*, 765 F.2d 31, 36 (3d Cir. 1985); *see also Livingston v. Califano*, 614 F.2d 342, 345 (3d Cir. 1980).

his strongest case for benefits."[298]

Here, the vocational expert acknowledged pain affects "concentration, persistence, and pace, and attending to job duties," and could be work preclusive.[299] The vocational expert further stated if plaintiff were experiencing pain at the level she claimed, she was not employable,[300] because such pain would reduce her productivity more than 15 to 20 percent,[301] and cause excessive absences.[302]

In light of this evidence, the ALJ properly determined plaintiff's mental capacity for work would be affected by her pain, and would limit the type of work she could perform.[303]  The ALJ specifically discussed the intensity, persistence and functionally limiting effects of her pain,[304] finding the pain was as intense as plaintiff asserts.[305]

The ALJ further noted plaintiff never claimed any memory, concentration, or attention deficits, and found no evidence of such complaints in the record.[306]  Despite plaintiff's arguments it was the obligation of the ALJ to ferret out her mental limitations during the hearing,[307] since she was represented by counsel,[308] this burden rested with her.[309]

Furthermore, the ALJ considered Dr. Callahan's findings that her depression and

---

[298] *Glenn v. Secretary of Health and Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987).
[299] D.I. 11 at 52.
[300] *Id.*
[301] *Id.*
[302] *Id.* at 53.
[303] *Id.* at 26.
[304] *Id.* at 24.
[305] *Id.*
[306] *Id.*
[307] D.I. 14 at 7.
[308] *Ferguson v. Schweiker*, 765 F.2d 31, 36 (3d Cir. 1985); *see also Livingston v. Califano*, 614 F.2d 342, 345 (3d Cir. 1980).
[309] 42 U.S.C § 423(d)(5)(A).  *See also Bowen*, 482 U.S. at 147 n.5.

anxiety would often interfere with concentration and other work-related mental abilities,[310] and found no support in the record.[311]  His determination that Dr. Callahan's assessment of plaintiff's work-related mental deficiencies lacked credibility is supported by substantial evidence.  Notes by Dr. Schwartz on April 6, 2010,[312] contemporaneous with Dr. Callahan's April 2010 assessment, describe plaintiff's mood and affect as alert and cooperative, with no evidence of acute distress.[313]  The ALJ properly evaluated the relevant evidence regarding mental limitations, by restricting employment to simple, routine, unskilled work.

## VII.   ORDER AND RECOMMENDED DISPOSITION

For the reasons contained herein, I recommend that:

(1) Plaintiff's motion for summary judgment (D.I. 13.) be GRANTED in part, and the issues related to hand and arm limitations be remanded for further consideration.

(2) Defendant's cross-motion for summary judgment (D.I. 16) be DENIED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), FED. R. CIV. 72(b)(1), and D.Del.LR 72.1.  The parties may serve and file specific written objections within ten (10) days after being served with a copy of this Report and Recommendation.

The parties are directed to the Court's standing Order in Non-Pro Se matters for Objections Filed under FED. R. CIV. 72, dated November 16, 2009, a copy of which is available on the Court's website, www.ded.uscourts.gov.

---

[310] D.I. 11 at 26 (citing D.I. 11 at 427-30).
[311] *Id.*
[312] *Id.*
[313] *Id.*

Date: July 24, 2013                    /s/   Mary Pat Thynge
                                       UNITED STATES MAGISTRATE JUDGE